IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 17, 2008

## DONALD LYNN MILLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 78804     Kenneth F. Irvine, Jr., Judge**

---

**No. E2008-00827-CCA-R3-PC - Filed July 2, 2009**

---

The Petitioner, Donald Lynn Miller, appeals the denial of post-conviction relief in the Criminal Court for Knox County from his convictions for felony murder and especially aggravated robbery. The trial court imposed consecutive sentences of life and twenty-three years. On appeal, the Petitioner contends that the trial court erred in finding that he did not receive the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Donald Lynn Miller.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Randall E. Nichols, District Attorney General; and C. Leon Franks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

We take the following facts from this court's 2001 opinion affirming the convictions.

> The [Petitioner], age twenty-eight, and Brian Keith Burton were close friends and were both employed by a construction company in Knoxville. The [Petitioner] and Burton had discussed robbing the victim, James Tipton,[1] for a period of approximately two weeks. The [Petitioner] had known the elderly victim his entire life and routinely spoke with him. As a child, the [Petitioner] lived across the street from the victim and was aware that Tipton carried large sums of money on his person. On October 9, 1995, the [Petitioner]

---

[1]The author of this opinion and James Tipton are not related.

and Burton agreed to meet after work to carry out their plan of robbing the victim. That night, the [Petitioner] drove to Burton's house and the two proceeded to the victim's house. Before reaching the victim's house, however, the [Petitioner] parked his truck in a neighbor's driveway. Burton removed a metal bar from the back of the [Petitioner's] truck and both men approached the victim's house.

The [Petitioner] knocked on the front door. When the victim answered, the [Petitioner] advised Tipton that he had run out of gas and asked if he could borrow some gasoline. Tipton gave the [Petitioner] a five-gallon can of gasoline which he kept in his truck. Burton then came up from behind the victim and struck him three times in the head with the metal bar. The victim died immediately from blunt force trauma to the head. He suffered a blow to the right side of his face, a blow to the top right side of his head, and a blow behind his right ear. Burton then took the victim's billfold, handgun, and over $10,000 in cash.

After the robbery, the [Petitioner] and Burton returned to Burton's house where they divided the money equally. Both the [Petitioner] and Burton proceeded to burn their clothes, shoes, and the victim's wallet in Burton's fireplace. They also disposed of the victim's gun, the metal bar, and the gas can by throwing them into a lake. The victim's body was discovered two days later.

State v. Donald Lynn Miller, No. E1999-00148-CCA-R3-CD, Knox County, slip op. at 2 (Tenn. Crim. App. Jan. 30, 2001) (footnote omitted), delayed app. denied (Tenn. May 1, 2006).

In 2003, the Petitioner filed the first of three pro se petitions for post-conviction relief. In it, he alleged that appellate counsel failed to appeal his case to the Tennessee Supreme Court, failed to notify the Petitioner before withdrawing, and failed to notify the Petitioner of his appeal's status in the Court of Criminal Appeals; that trial counsel failed to argue the motion to suppress the Petitioner's statements properly; that the evidence was insufficient to convict the Petitioner; that the indictment was legally insufficient and failed to state the essential elements of felony murder and especially aggravated robbery; and that the trial court erred in permitting the State to "pass" the victim's skull to the jury. We take the following information from the trial court's subsequent order filed February 28, 2008. The trial court granted the Petitioner a delayed appeal in 2006 to the Tennessee Supreme Court, but the order was silent as to grounds. See T.C.A. § 40-30-113 (2006). The Tennessee Supreme Court denied review. The Petitioner's two subsequent petitions for post-conviction relief were dismissed as falling outside the statute of limitations. See T.C.A. § 40-30-102(a) (2006). The first petition, the subject of this appeal, was stayed pending the result of the delayed appeal to the Tennessee Supreme Court.

At the post-conviction hearing, the Petitioner's counsel stated that the only issue for the hearing was the ineffective assistance of trial counsel. The Petitioner testified that he had no difficulty reading and writing. He stated that although someone else drafted his petition, he had reviewed it with the drafter and understood what it contained. He said he did not know the charges against him until after he had been convicted. He said his attorney at the preliminary hearing told him to sign a piece of paper to go home on bond. He said that he did not know when trial counsel, another attorney, had been appointed but that three years elapsed from his appointment until trial. He stated that during the three years he was on bond, he did not know the charges against him. He claimed to have met with trial counsel during these three years only four or five times for approximately one hour each time. He estimated that he met with counsel only ten hours during three years. He said trial counsel advised him to accept a plea offering a twenty-five-year sentence.

The Petitioner testified that he gave the police three statements, the third of which he claimed was coerced. He said he told the police during the first two statements that he did not kill the victim and that he was not present during the beating. He stated that the jury convicted him based solely on his third statement, in which he said he told the police what they wanted to hear. He said he told the jury that this statement was untrue. He said he did not think trial counsel filed a motion to suppress the statements, but he then acknowledged that counsel had done so and that he had been present at the suppression hearing.

The Petitioner testified his defense strategy had been that he was not present at the killing. He said he rejected the plea offer of twenty-five years' incarceration because he was innocent. He said trial counsel spoke with both him and his family members about the plea offer and tried to enlist the family's help to convince the Petitioner to plead guilty. He said that he told the jury that he had not been present for the murder. He stated that his co-defendant accepted the same plea offer of twenty-five years' incarceration and that the co-defendant did not testify at the Petitioner's trial. He said that he presented his father and his employer as witnesses but that the State presented the testimony of three witnesses who said the Petitioner had money after the robbery. He said, however, that none of these witnesses saw the Petitioner commit the crimes.

The Petitioner testified he was convicted based on the use of his inculpatory third statement and said he should not have testified at trial. He said that before trial he and trial counsel had a "heated argument" during which he said trial counsel was pushing him to accept the plea offer. He said that he asked trial counsel if he could have a new attorney. He said trial counsel told him to ask the trial court, but it would be unlikely the court would appoint another attorney. He claims trial counsel told him that he would end up incarcerated. The Petitioner said that he did not ask the trial court for new counsel and that he went to trial and testified. He said that counsel was unprepared for trial. He said he did not want to testify and did not remember the trial court advising him of his right not to testify.

The Petitioner testified that his first appellate counsel filed a brief with this court and that another attorney was appointed by this court. He said that this person never told him of this court's opinion affirming the convictions and that he never received a copy of the opinion. He stated he only learned of the opinion in 2003 and then filed his first petition for post-conviction relief.

On cross-examination, the Petitioner testified that he did not decide to testify. He stated that if trial counsel had been prepared for trial, he would not have had the Petitioner testify. He also claimed counsel told him the day of trial that the State did not pay him enough money for him to "look after" the Petitioner's case. He denied knowing that he did not have to testify at trial. He said he testified because the jury needed to know all sides to the case.

Regarding his statements to law enforcement, the Petitioner testified that he made three recorded statements, the first two of which he said were truthful. He agreed that he said in his third statement that he and the co-defendant discussed robbing the victim because the victim displayed a large amount of money in public. He remembered that the sheriff's deputies asked him whether the first two statements had been true, and he remembered telling them in his third statement that he was ready to tell them "everything." He said he remembered telling the deputies in his third statement that he and the co-defendant waited in a truck outside the victim's house because the victim was not home. He remembered saying the co-defendant took a "cheater bar" with him to the house, hit the defendant in the head, and stole the victim's money and gun. He also remembered saying that he and the co-defendant shared the robbery's proceeds and that this third statement was truthful.

The Petitioner testified that he did not remember trial counsel showing him the indictment. He said he first saw the indictment after he had been convicted and imprisoned. He agreed that the Tennessee Court of Criminal Appeals affirmed his convictions and that the Tennessee Supreme Court denied review of his delayed appeal.

On redirect examination, the Petitioner testified that trial counsel did not explain the elements of felony murder. In response to the trial court's questions, the Petitioner said he did not remember whether the jury had heard his third statement before he testified. He said he did not know how his trial would have been affected if the jury had heard his confession but not heard his testimony. He denied that he needed to testify to rebut the inculpatory third statement. He said the decision had not been his choice to make. On recross-examination, the Petitioner said he had not been prepared to testify.

Trial counsel testified that he became licensed to practice in Tennessee in 1967. He said he represented the Petitioner for approximately three years, from his appointment on August 12, 1996, through the Petitioner's May 1999 trial. He said that during this time, the Petitioner was on bond.

Trial counsel testified that he met with the Petitioner twenty times, for which he provided dates. He said that he also met with the Petitioner's father and that the Petitioner did not appear for two appointments. He said he spoke with the Petitioner more than the four or five times the Petitioner alleged. He stated that the Petitioner's claim that the Petitioner had not seen the indictment was false and that he and the Petitioner reviewed the indictment. He said he explained to the Petitioner what felony murder was and how the Petitioner could be convicted of it.

Trial counsel testified that he, an investigator, and the Petitioner went to the crime scene three or four times, during which they took pictures and videotaped the scene. He said the Petitioner

pointed out where he had been at the time of the murder. He said the Petitioner told him that as the Petitioner was coming down the hill, he heard the beating. He said he and the Petitioner tried to create a case based on the Petitioner's claim that he had not been present during the beating. He said he and the Petitioner discussed the Petitioner's right not to testify. He said the Petitioner both knew he was going to testify and decided to testify. Trial counsel stated, "[T]here wasn't a whole lot we could do if we didn't put [the Petitioner] on the stand."

Trial counsel disputed the Petitioner's claim that he had been convicted solely on the basis of the third statement to police. Counsel said that although there were no eyewitnesses who saw the Petitioner commit the crimes, a witness testified that the defendant asked her to conceal his money, and another witness testified that the defendant said he had killed someone and stolen money from the victim. Counsel stated that he had no independent recollection if the State used all three statements at trial. He also stated that he filed the Petitioner's motion for new trial but that the Petitioner hired another attorney for the hearing.

On cross-examination, trial counsel testified that he interviewed all witnesses that had any information about the case. He said that the Petitioner had provided him names and contact information for some witnesses and that the Petitioner even took counsel to one or two places to meet these people. He said that he did not interview the witnesses who had information about the co-defendant's purchase of a vehicle because they did not have information regarding the Petitioner. He said he had three investigators working on the case at different times, who interviewed the witnesses before trial counsel interviewed them. He said that he showed the Petitioner the photographs and videotape of the crime scene and that he told the Petitioner what the witness testimony against him would be at trial.

Trial counsel testified that he was ready to try the case the day of trial and that several continuances had been granted. He said he worked on the Petitioner's case in court for 25.5 hours and out of court for 165.5 hours. He referred to his notes to say that he reviewed the case's problems with the Petitioner and that he conveyed the plea offer to the Petitioner, the Petitioner's wife, the Petitioner's father, and the father's wife. Counsel said that he explained the indictment, including premeditated and felony murder, to the Petitioner and that he explained to the Petitioner how he could be convicted of felony murder even if he had not been the killer.

Trial counsel testified that he and the Petitioner discussed whether the Petitioner would testify. He said he told the Petitioner that he had the right not to testify but that their trial strategy required them to rebut the Petitioner's inculpatory third statement. He said he thought the State had introduced this statement and the interrogating deputies' testimony before the Petitioner testified. He stated he recommended the Petitioner testify to explain why the third statement was not true. He said the Petitioner made the decision to testify. He said he also thought that perhaps if the Petitioner testified, the jury might convict him of a lesser included offense instead of the felony murder charge for which he was actually convicted. He said that he would give the Petitioner the same advice again and that he had advised him to accept the plea offer for a twenty-five-year sentence, the same offer extended to the co-defendant. He said he did not think the case would have turned out differently had the Petitioner decided not to testify. He said the Petitioner had tried to argue with the prosecutor in his testimony and tried unsuccessfully to rebut his third statement. On redirect examination,

-5-

counsel testified that he thought the co-defendant accepted the plea offer before the Petitioner's trial. The State did not introduce evidence.

The trial court denied post-conviction relief. The trial court accredited the testimony of trial counsel, who referred to his records, over that of the Petitioner. Additionally, the trial court found that the Petitioner had not presented proof regarding an allegedly faulty indictment. It found that the Petitioner failed to show the ineffective assistance of trial counsel regarding the motion to suppress, trial counsel's investigation of the case, the amount of time trial counsel met with the Petitioner, and the decision for the Petitioner to testify.

On appeal, the Petitioner contends the trial court erred in dismissing the petition. The State counters that the Petitioner has waived claims by not creating a record that included his amended petition for post-conviction relief, that the Petitioner did not show inadequate preparation of trial counsel and prejudice to the Petitioner's case from it, and that the Petitioner did not show that he was forced to testify.

The burden in a post-conviction proceeding is on the Petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See DeCoster, 487 F.2d at 1201; Hellard, 629 S.W.2d at 9.

We conclude the trial court did not err in denying relief. The trial court accredited the testimony of trial counsel over the testimony of the Petitioner. The facts do not preponderate against this determination. Trial counsel testified that he was ready to try the Petitioner's case and had devoted over 165.5 hours to preparation out of court, including visiting and documenting the crime scene with the Petitioner. Counsel stated he met with the Petitioner over twenty times, for an hour or more each time, contrary to the Petitioner's claim that they had met only four or five times during their three-year relationship. Counsel testified that he had spoken to all witnesses connected with the case and told the Petitioner of their testimony. Counsel also contradicted the Petitioner's claim that he did not know the charges against him by saying counsel reviewed and explained the charges in the indictment to the Petitioner, including how he could be convicted for felony murder. Counsel said he planned the Petitioner's defense strategy to comply with the Petitioner's claim of not being present during the beating. The evidence also reflects trial counsel filed a motion to suppress the Petitioner's third statement, the motion was overruled, and the State used the Petitioner's inculpatory third statement along with witness testimony to obtain the Petitioner's convictions. Counsel also said he advised the Petitioner to accept a plea offer of a twenty-five-year sentence instead of going to trial on first degree murder charges. However, the Petitioner opted to reject the offer, while maintaining that he did not inflict the lethal blows. Counsel also said that he and the Petitioner discussed the Petitioner's right not to testify and that the Petitioner chose to testify because he needed to explain to the jury why the incriminating third statement was untrue. The Petitioner testified during the hearing that he made this third statement because that was what the officers wanted him to say.

In view of these facts, the Petitioner has failed to show that trial counsel's performance fell below an objective standard of reasonableness. From the evidence, trial counsel fully investigated the case, was prepared for trial using the defense the Petitioner wanted, and advised the Petitioner to testify as the way to refute the State's evidence.

The Petitioner also did not show a reasonable probability that the result of the proceeding would have been different. Trial counsel and the Petitioner testified that their strategy had been that

the Petitioner had not been involved in the beating.  However, the jury chose to accredit the State's evidence against the Petitioner, which included testimony that the Petitioner admitted killing someone, that the Petitioner had a large amount of money after the robbery and murder, and that the Petitioner asked a witness to conceal his money.  The State also used the Petitioner's inculpatory third statement as evidence.  In view of the evidence against him, he has not shown that he would have obtained a different result if he had not testified.  The Petitioner is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the trial court's denial of relief.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE